IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BOBBY OWEN, | |
| Plaintiff, | **8:19CV462** |
| v. | |
| UNION PACIFIC RAILROAD CO., | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on defendant Union Pacific Railroad Co.'s ("Union Pacific") Motion to Exclude (Filing No. 36) portions of the testimony of plaintiff Bobby Owen's ("Owen") expert witness, Dr. Kevin Trangle ("Dr. Trangle"), and Motion for Summary Judgment (Filing No. 34). Owen opposes (Filing Nos. 44 and 45) both motions. Union Pacific's motion to exclude is denied as explained below; its summary-judgment motion is granted.

## I.   BACKGROUND

Owen began working for Union Pacific in July 1993. On May 1, 2017, Owen was working as a gang laborer as a trackman on a four-man gang in Shelton, Nebraska. Owen's gang, which was relatively new to him, included another gang laborer, a backhoe operator named Darin Stearley ("Stearley"), and foreman Steve Williams ("Williams"). Tim Schweitzer ("Schweitzer") was the gang's supervisor and Ron Cooper ("Cooper") was the manager.

As a trackman, Owen performed manual labor maintaining and repairing railroad tracks. His job included identifying and repairing broken rails and switches, bad railroad ties, and defects in the track bed to ensure trains run safely on the tracks. Owen's job consisted of "physically demanding" work that varied from day to day but could be "dangerous."

Owen worked in Shelton for about eight days.  During that time, Stearley told Williams he observed Owen stumble at the jobsite.  Owen, who had a knee replaced in 2012 because of arthritis, maintains Stearley simply saw his usual slight limp.

The next day, Stearley advised Williams that he saw Owen wander into the "red zone" or "work zone" of his backhoe where Owen could be hurt.  Stearley told Williams Owen almost walked face first into the rail Stearley was lifting.  Stearley suggested that Williams talk with Owen about heat stress and let him know he could take breaks.  Owen does not recall either incident.

Stearley's comments amplified Williams's own concerns.  Williams had observed Owen drive a piece of equipment into the backhoe's red zone and saw him struggle a couple of times to get up from kneeling on the ground.  On May 9, 2017, Williams also became concerned Owen would overheat when he was wearing a buttoned-up raincoat when it was hot out—95°F by Williams's memory.  Owen denies wearing a raincoat on a hot day and disputes Williams's memory of the temperature on May 9.  He also denies any difficulty getting up but does recall discussing the red zone with Williams—though he maintains he did not enter the red zone.

At any rate, Williams then called Schweitzer to discuss his concerns for Owen's health.  On May 10, 2017, Schweitzer came to Shelton to observe Owen.  He testified he saw Owen sitting frequently, struggling to get around, and having some trouble breathing.  Schweitzer, who had worked with Owen before and was aware of his limp, thought Owen was struggling more and having a hard time keeping up.  Owen again denies having any difficulty that day beyond his usual limp.

Schweitzer relayed his concerns and those of Williams and Stearley to Cooper, who noted it was unusual for union employees to raise safety concerns about a fellow worker.  Cooper discussed Owen's situation with his own supervisor and a Union Pacific nurse and decided to request that Owen undergo a fitness-for-duty ("FFD") evaluation.

2

Union Pacific policy permits such a request "based on credible information which raises a concern about the employee's ability to safely perform his/her job duties."  In filling out the form, Cooper stated the request was based on observations of "difficulty climbing," "unsteady walk," "fatigue," "shortness of breath," and "stumbling."  Cooper also mentioned Owen walking into the "red zone" and the "noticeable change in behavior" Schweitzer reported.

On May 11, 2017, Schweitzer and Cooper pulled Owen from service, telling him they were concerned he might fall and hurt himself based on Schweitzer's earlier observations.  Schweitzer also told Owen his eyes looked glassy.  The two sent Owen home pending completion of an FFD evaluation.  That same day, Stearley, Williams, and Schweitzer all prepared written statements documenting their concerns about Owen.

Owen did not object when he was pulled from service.  Nor did he make a time claim or authorize his union to make one on his behalf.  When Owen asked Schweitzer and Cooper to release him so he could just bid back to his previous assignment, they told him they could not do that.

During his deposition, Owen acknowledged he may have a limp but denied his knee problem substantially limits his ability to walk or carry on any other major life activity.  He further denied stumbling, having any difficulty climbing, needing excessive breaks, or having any fatigue, weakness, or shortness of breath before he was pulled from service.

The day Owen was pulled from service, Teresa Rodino ("Rodino"), a Union Pacific nurse, called Owen at home and left a message to call her back to discuss the next steps in the process.  Owen does not recall getting such a message.

On May 15, 2017, Rodino called Owen again and left messages on his home and cell phones requesting some of his medical records.  Owen authorized his treating

physician to send the records, which Union Pacific received later that day.  Owen again states he does not recall receiving the message.

That same day, Owen went to the hospital with complaints of chest pain and shortness of breath.  Though he had been having chest pains for about two weeks, that was the first time he went to the doctor for his chest pain.  A couple of weeks later, Owen underwent a heart catheterization and began taking medicine to keep his arteries clean.  He has not had chest pain or shortness of breath since.   His doctor concluded he had "mild-to-moderate nonobstructive coronary artery disease."  Owen never told Union Pacific about the issues with his heart or his resulting doctor visits.

On May 17, 2017, Owen and Rodino spoke by phone.  He advised her "he is able to do his job without any problems."  He stated his only medical conditions were arthritis with his 2012 knee replacement and an unrelated issue he managed with medication.  Owen requested a "full duty return to work."

Dr. Richard Lewis ("Dr. Lewis"), an Assistant Medical Director at Union Pacific, reviewed Owen's medical records and referred him to Dr. Caroline Sorenson ("Dr. Sorenson") for a clinical interview and physical assessment.  On May 26, 2017, Owen advised Rodino by phone that he and his wife were traveling to Jamaica from June 5 to June 24, 2017.  He asked that she not schedule any appointments during that time.

On June 5, 2017, Rodino sent Owen's medical records to Dr. Sorenson.  On June 29, 2017, Owen saw Dr. Sorenson.  She sent a report of that visit to Union Pacific about a week later.  During his visit, Owen told Dr. Sorenson about his chest pain and heart catheterization.  He also acknowledged some difficulties with balance and mobility; difficulty with repetitive or heavy lifting; needing extra time to bend, stoop, and kneel due to the arthritis in his knee; having decreased grip; and being uncomfortable with some of his job requirements.

4

Owen told Dr. Sorenson that "his supervisors have always told him to get help if he felt something was too hard for him to do." In his deposition, Owen testified he never asked for any extra help that other employees were not getting, and his supervisors did not give him any. He further testified he did not need an accommodation to perform his job and never requested one.

After Owen's visit, Dr. Sorenson advised Dr. Lewis that some of what Schweitzer observed could "have been secondary to [Owen's] coronary artery disease which appears to have been addressed." Dr. Sorenson recommended that Owen undergo "a formal functional capacity evaluation [("FCE")] to characterize his limits and provide a framework for accommodation." Dr. Lewis agreed and ordered an FCE.

On July 13, 2017, Rodino informed Owen that she scheduled an FCE for him on August 2, 2017, the first available date. Owen completed the evaluation as scheduled. About two weeks later, Rodino followed up with the provider to get the status of Owen's FCE report. The provider said it was not yet complete, but they would note that it should be completed as soon as possible. Union Pacific received the completed FCE report on August 24, 2017.

In the meantime, Owen contacted Union Pacific to advise that he was scheduled to have carpal-tunnel surgery on August 22, 2017. Owen states he did not need to have the surgery then but would need it eventually and decided to get it done while Union Pacific was holding him out of service. On August 25, 2017, Owen advised Union Pacific he was scheduled for surgery on September 5, and September 21, 2017.

On August 31, 2017, Dr. Lewis advised Rodino that Owen would likely be out until October or November because of his surgery. Dr. Lewis opined that the surgery "may address [Owen's] grip strength issues, but not the mobility and balance." He suggested they "review how to proceed next week."

Owen retired from Union Pacific effective August 31, 2017. He does not recall discussing his retirement with anyone at Union Pacific or requesting an update on his FFD. He says he repeatedly tried to call for an FFD determination, but no one ever answered or returned his calls so he "just quit." Although Owen conceded in his deposition that no one at Union Pacific pressured him to retire, he now maintains he had to retire because he had been out of service since May 11 and was running out of money.

On September 7, 2017, Rodino learned Owen had retired. Given that news, Dr. Lewis never completed a thorough review of Owen's FCE to determine whether he could perform the essential functions of his job either with or without accommodation.

On October 21, 2019, Owen sued Union Pacific, alleging it violated the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.* He asserted three causes of action: disability discrimination, failure to accommodate, and impermissible medical examination. He has since conceded (Filing No. 44) his failure-to-accommodate claim is untimely.

On September 30, 2020, Union Pacific moved to exclude portions of the testimony of Owen's expert witness and moved for summary judgment on all of Owen's claims. The Court first considers Union Pacific's motion to exclude. *See*, *e.g.*, *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) (requiring "district courts to rely only on admissible evidence at the summary judgment stage" (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011))).

## II.   DISCUSSION

### A.   Motion to Exclude Expert Testimony

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914 (8th Cir. 2017). Under Rule 702, the Court "acts as a 'gatekeeper' screening evidence for relevance and reliability." *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 448 (8th Cir. 2008) (quoting *Daubert v.*

*Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).   An expert's testimony is admissible "if his 'specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;' the testimony is 'based on sufficient facts or data' and 'the product of reliable principles and methods;' and he 'has reliably applied the principles and methods to the facts of the case.'"   *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 829 (8th Cir. 2019) (quoting Fed. R. Evid. 702).

"[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question," the Court "must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"   *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (alteration in original) (quoting *Daubert*, 509 U.S. at 592).   "[R]ejection of expert testimony is the exception rather than the rule."   *In re Wholesale Grocery*, 946 F.3d at 1001.

Union Pacific first asks the Court to prohibit Dr. Trangle "from providing opinions on the ultimate legal questions that are for the jury alone to decide," namely, whether Owen "had a disability or was regarded by Union Pacific as having a disability at the time of his [FFD] evaluation."   Union Pacific acknowledges "expert evidence may be admissible even though it embraces an ultimate issue to be decided by the jury," *see* Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."), but argues "Dr. Trangle should not be permitted to testify as to how the jury should decide ultimate legal conclusions."

Owen responds that he "will not offer testimony from Dr. Trangle" regarding such legal conclusions.   That ends the matter at this point.   Union Pacific's request to exclude Dr. Trangle's ultimate legal conclusions is denied as moot.

Union Pacific next asks the Court to exclude testimony from Dr. Trangle that relies on excessive speculation and unwarranted assumptions.   *See Barrett v. Rhodia, Inc.*, 606 F.3d 975, 981 (8th Cir. 2010) ("Expert testimony is inadmissible where . . . it is

excessively speculative or unsupported by sufficient facts."). In particular, Union Pacific challenges any proffered testimony from Dr. Trangle that Union Pacific (1) could have accommodated any lifting restriction Owen may have had, (2) should not have referred Owen for an FFD evaluation, (3) should have allowed him to work during his evaluation, and (4) took too long to complete the evaluation. Union Pacific also contends Dr. Trangle impermissibly strays beyond his area of expertise and cherry picks his evidence.

Although Union Pacific raises legitimate questions about some of Dr. Trangle's opinions, the Court finds the proposed evidence is not so flawed as to require its wholesale exclusion at this point. *See*, *e.g.*, *Kirk v. Schaeffler Grp. USA, Inc.*, 887 F.3d 376, 391 (8th Cir. 2018) (explaining expert testimony with sufficient indicia of reliability "should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset" (quoting *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014))). Rule 702 "is one of admissibility rather than exclusion." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (quoting *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991)).

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988). Accordingly, the Court should only exclude an expert opinion if it "is so fundamentally unsupported that it can offer no assistance to the jury." *Loudermill*, 863 F.2d at 570; *see also Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003) ("Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact.").

Though flawed, Dr. Trangle's opinions are not "so fundamentally unsupported" as to have no value. *Loudermill*, 863 F.2d at 570; *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) ("Courts should resolve doubts regarding the

usefulness of an expert's testimony in favor of admissibility."). Union Pacific's motion to exclude those opinions as unsupported and speculative is therefore denied. Having failed to squarely land its knockout blow, Union Pacific must continue to rely on the strength of the adversary process to attack Dr. Trangle's shakier opinions. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### B.      Motion for Summary Judgment
#### 1.      Standard of Review

On a motion for summary judgment, the Court views genuinely disputed facts in the light most favorable to the nonmoving party and gives them the benefit of all reasonable inferences. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115 (8th Cir. 2018). But the Court will "not accept unreasonable inferences or sheer speculation as fact." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004).

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

To withstand such a motion, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Where the

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is required. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci*, 557 U.S. at 586).

### 2.    Timeliness

The ADA requires an employee bringing a disability discrimination claim "to file a complaint with the [Equal Employment Opportunity Commission] before filing a suit in federal court." *Voss v. Hous. Auth. of the City of Magnolia*, 917 F.3d 618, 623 (8th Cir. 2019); *see also* 42 U.S.C. § 12117(a).  They must file the discrimination charge "within 300 days of the alleged discriminatory act." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 520 (8th Cir. 2011).

Union Pacific contends Owen's ADA claims are time barred because he did not file his discrimination charge within 300 days of the alleged discrimination.  Owen does not deny that he did not file his claims within the 300-day window.[1]  Rather, he argues the limitation period for his discrimination and impermissible-medical-examination claims was tolled by the putative class action in *Harris v. Union Pacific Railroad Co.*, 953 F.3d 1030 (8th Cir. 2020).   Owen relies on the tolling principles announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553 (1974), in which the Supreme Court held "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class."  As Owen sees it, his remaining claims put him in the putative class in *Harris*, and that case tolled the applicable statute of limitation, making his claims timely.[2]

---

[1]Indeed, Owen expressly "waives his failure-to-accommodate claim" on that basis.
[2]Owen alternatively argues Union Pacific should be judicially estopped from relying on the statute of limitation because Union Pacific "identified Owen as a putative-class member in *Harris*" and "Owen did not file his charge within 300 days of the adverse action because Union Pacific represented to him that he was a putative-class member."  In a Notice of Correction (Filing No. 46) to the Court, Owen's counsel walks that back quite a bit, reluctantly admitting—at Union Pacific's prompting—that Union Pacific has been careful over the course of litigation not to specifically identify Owen as

10

As pertinent here, the plaintiffs in *Harris* defined the putative class as those employees "who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation." Union Pacific makes a strong argument Owen does not fit within the putative class because he (1) admitted in his deposition he did not object when Union Pacific pulled him from service "and did not ask his union to file a time claim on his behalf" and (2) did not suffer any other adverse employment action.

With respect to the latter, Union Pacific contends Owen's purported "forced" retirement was not a constructive discharge because he retired on his own and left without giving Union Pacific a reasonable chance to address any alleged problems. Union Pacific credibly contends that—in light of Owen's actions—the tolling principles from *American Pipe* do not apply and Owen's claims are untimely.

Union Pacific nonetheless does not press the timeliness issue in its reply (Filing No. 47). Rather, Union Pacific suggests the Court can avoid getting into the weeds on the complex and contested questions of putative-class definition and tolling in this case by deciding Union Pacific's summary-judgment motion on the merits.

The point is well-taken. And the statute of limitation presents no barrier to the Court skipping ahead to substantive review. *See, e.g., Rodriguez v. Wal-Mart Stores, Inc.*, 891 F.3d 1127, 1129 (8th Cir. 2018) ("[T]he statutory requirement to file a timely EEOC charge is not jurisdictional."). The Court therefore assumes, for the purposes of summary judgment, that Owen's discrimination and examination claims are timely.

### 3.    Disability Discrimination

The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

---

a putative class member. Contrary to Owen's counsel's bald assertion that the "distinction does not affect [his] arguments," the correction actually guts Owen's estoppel and reliance arguments.

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of" their job. *Id.* § 12111(8). A person is disabled under the ADA if they have "a physical or mental impairment that substantially limits one or more major life activities," has "a record of such an impairment," or is "regarded as having such an impairment." *Id.* § 12102(1).

Owen has not submitted any direct evidence of disability discrimination, so the Court analyzes his claim under the familiar burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1135 (8th Cir. 2020). Under that framework, Owen must first establish a prima facie case of discrimination by showing "(1) he is a disabled person as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability." *Higgins v. Union Pac. R.R.*, 931 F.3d 664, 669 (8th Cir. 2019) (quoting *Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014)).

If Owen makes that showing, a rebuttable presumption of discrimination arises and the burden of production shifts to Union Pacific to present evidence of a "legitimate, nondiscriminatory reason for" its actions. *McDonnell Douglas*, 411 U.S. at 802. If Union Pacific meets its burden, the presumption disappears, and Owen must show Union Pacific's stated reasons are pretext for unlawful discrimination. *Id.* at 804.

Proving "pretext 'requires more substantial evidence' than is required to make a prima facie case because evidence of pretext is viewed in light of [the employer's] justification." *Cody*, 763 F.3d at 997 (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002)). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated

12

employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).

On the record in this case, Owen struggles to show he is disabled or was regarded as disabled under the ADA. *See, e.g.*, *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1034 (8th Cir. 2012) (explaining that "[a] perceived disability to perform" a certain job "is not the same as a perceived disability" that substantially "limits a major life activity"); *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998) (concluding "[a] request for an evaluation is not equivalent to treatment of the employee as though she were substantially impaired" because "[e]mployers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims").   He also struggles to show he suffered an adverse employment action that "was motivated by intentional discrimination" based on a real or perceived disability.   *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1021 (8th Cir. 1998).

But even if the Court assumes Owen has established a prima facie case of disability discrimination, his claim fails because Union Pacific stated a legitimate, nondiscriminatory reason for removing Owen from service—his safety—and Owen does not adduce any probative evidence of pretext.  Owen's coworker and supervisors reported he was stumbling and struggling at times on the jobsite and they were concerned for him. Union Pacific says it pulled him from service and ordered an FFD to investigate whether Owen could safely do his job.

Owen maintains his coworkers and supervisors were mistaken in reporting he was having issues on the job beyond his usual limp, but he does not deny they made the reports or that Union Pacific could legitimately act on them.  To prove pretext, Owen had to show Union Pacific's stated reasons for pulling him from service are false or "unworthy of credence," *Smith*, 302 F.3d at 834 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)), *and* "that a discriminatory animus lies behind

13

[its] neutral explanations," *Roxas v. Presentation Coll.*, 90 F.3d 310, 316 (8th Cir. 1996). He has not made that showing.

Instead, Owen contends "this case is really about[] whether it was reasonable for Union Pacific to withhold Owen from service." Now it is Owen who is mistaken.

In reviewing an employer's stated reasons for its actions and an employee's evidence of pretext, the Court "must keep in mind that '[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions.'" *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998) (alteration in original) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)). The Court's "'inquiry is limited to whether the employer gave an honest explanation of its behavior,' not whether its action was wise, fair, or correct." *McKay v. U.S. Dep't of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) (quoting *Harvey*, 38 F.3d at 973).

"While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination." *Clay v. Hyatt Regency Hotel*, 724 F.2d 721, 725 (8th Cir. 1984). And on that pivotal question, Owen fails to create a genuine dispute of material fact.

### 4.    Medical Examination

Owen alleges Union Pacific violated the ADA by requiring him to undergo an "impermissible medical examination." Section 12112(d)(4)(A) of the ADA prohibits covered employers from requiring a medical examination or inquiring into the disability status of an employee "unless such examination or inquiry is shown to be job-related and consistent with business necessity." An employee need not "be disabled to bring a claim under § 12112(d)." *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 406 (8th Cir. 2018).

"When an employer requires a medical exam of its employees, the employer has the burden of showing that the exam is job-related and that 'the asserted business necessity is vital to the business and the request for a medical examination or inquiry is

no broader or more intrusive than necessary.'" *Parker v. Crete Carrier Corp.*, 839 F.3d 717, 722 (8th Cir. 2016) (quoting *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007)). "[C]ourts will readily find a business necessity if an employer can demonstrate . . . a medical examination or inquiry is necessary to determine . . . whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties." *Thomas*, 483 F.3d at 527 (alterations in original) (quoting *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 98 (2d Cir. 2003)). Such is the case here.

Union Pacific presented strong evidence received from various sources that it had objectively valid concerns about Owen's ability to safely do his job. As a trackman, Owen performed skilled manual labor around heavy equipment. His work was physically demanding and could be dangerous. Stearley, one of Owen's coworkers, told Williams, their foreman, he was concerned about Owen stumbling on the job and wandering into the red zone of his backhoe. That information amplified Williams's similar concerns based on his own observations of Owen at work. Williams relayed those concerns to Schweitzer, who came to the job site to see for himself. Schweitzer, who had worked with Owen before, testified he observed Owen struggling more to move around, sitting often, and having some trouble breathing.

When Schweitzer passed their collective concerns on to Cooper, he conferred with his supervisor and a Union Pacific nurse. He ultimately decided to request that Owen undergo an FFD evaluation pursuant to a Union Pacific policy that permits such a request "based on credible information which raises a concern about the employee's ability to safely perform his/her job duties." The request was job-related, vital to Union Pacific's business, and "no broader or more intrusive than necessary." *Thomas*, 483 F.3d at 527.

The ADA permits employers "to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims." *CIGNA Healthcare*, 139 F.3d at 599. An FFD evaluation is "a reasonable means of" determining if an

employee can safely do their job.  *Wisbey v. City of Lincoln*, 612 F.3d 667, 673 (8th Cir. 2010), *abrogated on other grounds by Torgerson*, 643 F.3d at 1043, 1059 app.

Union Pacific has demonstrated a legitimate, nondiscriminatory reason to request a medical examination.  Owen has not presented any probative evidence to reasonably call that reason into question.  That Owen now disputes whether he was struggling on the job does not suffice.  Union Pacific is entitled to summary judgment on this claim.

Based on the foregoing,

IT IS ORDERED:

1.   Union Pacific's motion to exclude expert testimony (Filing No. 36) is denied as set forth in this Memorandum and Order.

2.   Union Pacific's motion for summary judgment (Filing No. 34) is granted.

3.   This case is dismissed with prejudice.

4.   A separate judgment will issue.

Dated this 12th day of November 2020.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge

16